IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIPHAN MOM,<br><br>    Plaintiff,<br><br>  v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>    Defendant / | No. C-04-2755 MMC<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>(Docket Nos. 13, 16) |

    Plaintiff Siphan Mom brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner"). Before the Court is plaintiff's motion for summary judgment or, in the alternative, for remand, and the Commissioner's opposition and cross-motion for summary judgment. Having considered the papers filed in support of and in opposition to the motions, the Court rules as follows.[1]

**BACKGROUND**

    On June 28, 2002, plaintiff, who was then 47 years old, filed with the Social Security Administration ("SSA") an application for Supplemental Security Income ("SSI") benefits,

---

[1] Pursuant to the local rules of this district, the motions have been submitted on the papers without oral argument. See Civil L.R. 16-5.

alleging therein and in an accompanying Disability Report that he has been unable to work since January 1, 1979, as a result of "memory loss, headaches, back pain, difficulty getting up, stiff knees, insomnia, nightmares, post traumatic stress disorder [("PTSD")], stress, [and] burning pain down neck and spine." (See Certified Transcript of Administrative Proceedings ("Tr.") at 44.)  After plaintiff's application was denied by the SSA, both initially, (see Tr. at 29-32), and on reconsideration, (see Tr. at 34), plaintiff requested a hearing before an administrative law judge ("ALJ"), (see Tr. at 38).  On January 8, 2004, the ALJ conducted a hearing, at which time the ALJ heard testimony from plaintiff and Lloyd Meadow, Ph.D. ("Dr. Meadow"), a licensed clinical psychologist.  (See Tr. at 211-236.)  On January 30, 2004, the ALJ issued a decision, finding that plaintiff did not have any "severe physical or mental impairment(s)," that plaintiff's subjective complaints and alleged functional limitations were not "credible," and that the plaintiff was "not under a 'disability'" at any time on or before the date of the decision.  (See Tr. at 18.)

Plaintiff filed a request with the Appeals Council, seeking review of the ALJ's January 30, 2004 decision.  (See Tr. at 9.)  After the Appeals Council denied plaintiff's request for review, (see Tr. at 5-8), plaintiff filed the instant action.

**STANDARD OF REVIEW**

The Commissioner's denial of disability benefits will not be disturbed if it is supported by substantial evidence and based on the application of correct legal standards.  See Reddick v. Charter, 157 F.3d 715, 720 (9th Cir.1998).  "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995).  If the evidence is susceptible of more than one rational interpretation, the reviewing court will uphold the decision of the ALJ.  See id.

///
///
///
///

**DISCUSSION**

The ALJ analyzed plaintiff's claim using the SSA's five-step evaluation process. See 20 C.F.R. § 404.1520.[2] At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since filing his SSI application on June 28, 2002. (See Tr. at 15.) At the second step, the ALJ found plaintiff does not suffer from a "severe" mental or physical impairment, and thus concluded he was not disabled. (See Tr. at 15-18.)

Plaintiff argues in his motion for summary judgment that the ALJ erred by: (1) rejecting the opinions of plaintiff's treating psychiatric clinicians and by giving great weight to the opinions of the non-examining medical consultants; (2) failing to consider the opinion of plaintiff's treating psychiatrist; (3) not fully crediting plaintiff's subjective testimony; and (4) denying plaintiff's motion for a new psychological consultative examination. Plaintiff does not challenge the ALJ's conclusion that he does not suffer from any severe physical impairments, but does challenge the ALJ's conclusion that plaintiff lacks a severe mental impairment.

**A. The ALJ's Rejection of the Treating Mental Health Professionals' Assessment**

**1. Legal Standard**

"Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians." Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted). Where the treating physician's opinion contradicts the opinion of an

---

[2] "The Commissioner follows a five-step sequential evaluation process in assessing whether a claimant is disabled.
Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, a finding of not disabled is appropriate.
Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled." McCartey v. Massanari, 298 F.3d 1072, 1074 n. 6 (9th Cir.2002).

examining or consulting physician, the Commissioner must provide "'specific and legitimate reasons' supported by substantial evidence in the record" for rejecting the treating physician's opinion. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)); see also 20 C.F.R. § 404.1527(d)(2) (requiring that the Social Security Administration always "give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion"). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Circ. 1989) (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)); see also Social Security Ruling ("SSR") 96-2p ("[T]he notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.")

### 2. Medical Opinions

#### a. Plaintiff's Treating Mental Health Professionals

Plaintiff was treated by a psychologist, Mona Afary, Ph.D. ("Dr. Afary"), from May 2002 until December 2003. (See Tr. at 106-111, 140-45, 192-204.) In an intake interview conducted in May 2002, plaintiff described to Dr. Afary the trauma and beatings he and his family endured in Cambodia. (See id. at 109.) He reported problems such as forgetfulness, nightmares, insomnia, anxiety, and panic attacks. (See id. at 109-110.) Dr. Afary diagnosed plaintiff with PTSD, (see id. at 110), and gave plaintiff a Global Assessment of Functioning ("GAF") score of 50, (see id. at 111).

Plaintiff also was seen by Chhom Chhuy ("Chhuy"), a community mental health worker supervised by Dr. Afary, (see id. at 113, 116-17), as part of his mental care. Chhuy initially met with plaintiff in May 2002, and continued to meet with plaintiff through September 2003. (See id. at 112-15, 117, 123, 178-185.) Chhuy noted the same problems as those noted by Dr. Afary, as well as homesickness. (See id. at 117.) In December 2002, plaintiff began

attending group sessions supervised by Chhuy, in which patients socialized and learned about various services and resources. (See id. at 113, 179-185.)

In a form medical report dated December 20, 2002, Dr. Afary repeated her diagnosis that plaintiff suffered from PTSD and added a diagnosis of major depression. (See id. at 108.) These mental conditions, Dr. Afary concluded, substantially reduced plaintiff's ability to engage in work. (See id.) Among the "limitations" resulting from such conditions, Dr. Afary listed forgetfulness, dizziness, panic attacks, anxiety, insomnia, and nightmares. (See id.) Dr. Afary expected to release plaintiff for work on June 30, 2003. (See id.)

In January 2003, Chhuy completed a mental disorder questionnaire for the State of California Department of Social Services (hereafter "State Agency").[3] (See id. at 118-23). Chhuy noted therein that plaintiff had poor memory, difficulty concentrating, insomnia, frequent nightmares, and feelings of fear. (See id.) Additionally, Chhuy noted, plaintiff was illiterate and socially isolated. (See id. at 122.) In Chhuy's opinion, plaintiff suffered from PTSD and major depression, and his condition was not likely to improve. (See id. at 123.)

In March 2003, Dr. Afary completed a mental disorder questionnaire for the State Agency. (See id. at 140-45.) Dr. Afary noted therein plaintiff's disorientation and "extreme[ ]" forgetfulness, with the consequent need to be reminded of his appointments. (See id. at 141.) Dr. Afary also conducted a mental status examination in which she observed plaintiff to be "anxious" and "fearful," and to have a "serious problem with memory, concentration [and] orientation." (See id. at 141-43.) Additionally, Dr. Afary noted plaintiff was socially isolated and unable to sustain focused attention. (See id. at 144.) Dr. Afary concluded that plaintiff was "not able to adapt to stress common to the work environment, including decision making, attendance, schedules, and interaction with supervisors." (See id.) She again diagnosed plaintiff with PTSD, and, at this point, identified his prognosis as "poor." (See id. at 145.)

In September 2003, plaintiff met with James Gracer, M.D. ("Dr. Gracer"), a psychiatrist. (See id. at 200.) Dr. Gracer noted plaintiff's complaints of nightmares, insomnia, flashbacks,

---

[3] In his decision, the ALJ refers to the Department of Social Services as the "State Agency." (See, e.g., id. at 16.)

5

and fearfulness.  (See id.)  He also observed plaintiff to have a depressed, anxious mood and depressed, slightly distant affect.  (See id.)  Dr. Gracer diagnosed plaintiff with dysthymia[4] and PTSD, and prescribed Paxil and Trazodone.  (See id.)  Dr. Gracer's notes from their second session indicate plaintiff reported he was still sleeping only two hours a night, and that plaintiff's son had to remind him daily to take his medication.  (See id.)  Plaintiff reported that his flashbacks and anxiety attacks had improved, but that he still experienced nightmares.  (See id.)  Dr. Gracer administered a mental status examination, in which Dr. Gracer noted that plaintiff had a "flat affect" and appeared cognitively "dull."  (See id.)  Dr. Gracer also increased plaintiff's dosage of Paxil and Trazodone.  (See id.)

### b. Consultative Mental Health Professionals

On August 27, 2002, Faith Tobias, Ph.D. ("Dr. Tobias"), at the request of the State Agency, performed a neuropsychological screening evaluation that included a mental status evaluation and administration of the WMS-III, a standardized test.  (See id. at 98-102.)  Dr. Tobias concluded that plaintiff "[did] not appear to be currently experiencing significant mood or thought disorder" and that "[c]linical observation, and [plaintiff's] pattern of performance on the tests administered, indicated inadequate motivation and effort."  (See id. at 102.)  Dr. Tobias opined that plaintiff was "malingering," and therefore considered the test results "invalid."  (See id.)  The evaluation, however, was conducted through a translator, and Dr. Tobias noted that the quality of the interpretation was "poor."  (See id. at 99.)  In particular, Dr. Tobias noted, the translator was illiterate in Cambodian, and needed frequent reminding to repeat Dr. Tobias' instructions and plaintiff's comments exactly as stated, (see id.), which deficiencies, Dr. Tobias conceded, were "significant limitations" with respect to her diagnostic and clinical impressions.  (See id. at 101.)

On September 20, 2002, plaintiff's file was reviewed by another State Agency medical consultant.[5]  That consultant concluded that plaintiff had "no medically determinable

---

[4] At the hearing before the ALJ, Dr. Meadow testified that dysthymia "means there's some depression present," but that it is "not a major mental disorder."  (See id. at 228.)

[5] The signature of the state medical consultant is illegible.  (See id. at 147.)

impairment," but offered no explanation for such conclusion. (See id. at 147.) Thereafter, on March 20, 2003, George Norbeck, M.D., also a State Agency consultant, reviewed plaintiff's file at the reconsideration level of appeal; Dr. Norbeck found no psychological impairment based thereon, and affirmed the State Agency's initial decision. (See id. at 156-57.)

At the hearing on January 8, 2004, the ALJ called Dr. Meadow to offer his opinion as to plaintiff's impairments. (See id. at 223-35.) After reviewing the evidence of record and listening to plaintiff's testimony, Dr. Meadow concluded plaintiff had no significant psychological impairment. (See id. at 17, 226-27.) In particular, Dr. Meadow was of the view that PTSD was "not established in the record," only self-reported symptoms, (see id. at 227-228), and that even "giving credit to the diagnosis," a question remained as to plaintiff's level of functioning. (See id. at 230.)

### 3. The ALJ's Evaluation of the Medical Assessments

The ALJ did not provide any "specific and legitimate" reasons to support his decision to reject the opinions of plaintiff's treating psychologist, Dr. Afary. Rather, the ALJ summarily rejected Dr. Afary's opinion that plaintiff was unable to work, stating that Dr. Afary provided "no basis or criteria upon which she made that conclusion." (See id. at 17.) The ALJ also stated, without further elaboration, that Dr. Afary's conclusions regarding plaintiff's "mental functional limitations"[6] were "inconsistent with the treatment notes," and that the "treatment records [did] not contain any relevant findings to support" Dr. Afary's conclusions. (See id.)

As described above, however, Dr. Afary's treatment records do contain clinical findings in support of her diagnoses and conclusions. (See id. at 140-45,192-204). Of particular significance is Dr. Afary's notation that plaintiff received a GAF score of 50, (see id. at 111), which, in Dr. Meadow's opinion, "means very borderline functioning," (see id. at 230). The ALJ failed to give any reason for rejecting this score or to explain why such score was not a "relevant finding" that supported Dr. Afary's conclusions.

---

[6] "Mental limitations" include "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting." See 20 C.F.R. § 404.1545(c).

7

Additionally, nowhere in his decision does the ALJ mention plaintiff's treating psychiatrist, Dr. Gracer. Dr. Gracer diagnosed plaintiff as suffering from dysthymia and PTSD, and prescribed Paxil and Trazodone.

If the ALJ was concerned as to how, in the opinion of Dr. Afary or Dr. Gracer, plaintiff's PTSD, major depression, or dysthymia specifically precluded plaintiff from working,[7] the ALJ should have developed the record further by submitting specific questions to either or both of such treating clinicians. See 42 U.S.C. § 405(d); 20 C.F.R. § 404.950(d); 20 C.F.R. § 404.1527(c)(3). The ALJ has a duty to clarify the record when evidence from "a treating physician or psychologist or other medical source is inadequate for [the ALJ] to determine whether [the claimant is] disabled." See 20 C.F.R. § 416.912(e)(1). "Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." SSR 96-5p; see also Smolen, 80 F.3d at 1288 (holding where ALJ needs to know basis of treating physician's opinion, ALJ has duty to conduct appropriate inquiry, for example, by subpoenaing or submitting further questions to physician).

Further, the ALJ, in rejecting plaintiff's treating mental health professionals, accepted the opinions of the State Agency medical consultants that plaintiff had no severe mental impairment. (See Tr. at 17.) The ALJ found those "conclusions to be reasonable and well supported by the record." (See id.) Simply stating that the opinions are "well supported by the record" is not sufficient, however. See Smolen, 80 F.3d at 1285 (holding ALJ may not reject treating physicians' opinions unless he "makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record") (internal quotation and citations omitted).

---

[7] At the January 8, 2004 hearing, the ALJ stated: "That's what we're really hung up on here . . . trying to translate medically determined impairments into functional limitations." (See id. at 230.)

8

As noted, the ALJ ended the inquiry at the second step of the sequential inquiry, finding plaintiff does not suffer from any severe physical or mental impairments. (See Tr. at 18.) "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." See Smolen, 80 F.3d at 1290. "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Id. at 1290. Here, as noted, the ALJ did not provide sufficient reasons for rejecting the opinions of two treating clinicians that plaintiff suffers from PTSD. Moreover, the ALJ did not even discuss their additional diagnoses of major depression and dysthymia.

Accordingly, the Court finds the ALJ failed to adequately explain his reasons for rejecting the opinions of plaintiff's treating psychiatrist and psychologist in favor of the conclusions of the state's medical consultants.

### B. The ALJ's Findings as to Plaintiff's Credibility

The ALJ has the authority to determine whether a claimant's testimony is credible. See Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc). "General findings are insufficient; rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester, 81 F.3d at 834.

An analysis of an individual's symptoms requires an evaluation of the individual's credibility regarding his or her statements about pain or other symptoms and its functional effects. See SSR 96-7 at *4. That determination must contain "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals's statements and the reason for the weight." See id. For the ALJ to reject the claimant's complaints, [he] must provide specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (internal quotation and citation omitted).

Here, the ALJ found plaintiff to be "not fully credible" insofar as plaintiff alleges he is precluded from all work by reason of medically determinable mental impairments. (See Tr. at

9

17.) In so finding, the ALJ gave four reasons to support his assessment.[8]  First, the ALJ stated there were "no objective clinical findings" to support plaintiff's "allegations regarding the degree of his limitations." (See id.)  No further explanation is provided.  It is not enough for the ALJ "simply to recite the factors that are described in the regulations for evaluation symptoms."  See SSR 96-7p.  Moreover, although "symptoms cannot be measured objectively through clinical or laboratory diagnostic techniques, . . . their effects can often be clinically observed."  See id.; see also Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) (holding in case involving claim of fibromyalgia, "ALJ erred by effectively requir[ing] 'objective' evidence for a disease that eludes such measurement.") (internal quotation and citation omitted).  Here, Dr. Afary observed plaintiff's affect, which she noted to be "anxious and fearful," (see Tr. at 143), a well as his intellectual functioning, as to which she noted a "serious problem with memory , concentration [and] orientation," (see id. at 142).  In addition, Dr. Gracer observed plaintiff to be depressed as well as having a "flat affect" and "dull" cognition. (See id. at 200.)  The ALJ erred by not stating why  these clinical observations of plaintiff's symptoms should be ignored when evaluating plaintiff's credibility.[9]

      Second, the ALJ reasoned that plaintiff's "life is not inconsistent with the inability to perform consistently simple tasks."  (See id. at 17).  In that regard, the ALJ cited to plaintiff's daily activities, specifically, driving his children to school, running errands, taking public transportation, and, with the help of his children, cooking and performing household chores. (See id. at 18.)  The mere fact that a plaintiff "has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract" from his credibility as to his overall disability.  See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 1989).  Plaintiff "does not need to be 'utterly incapacitated' in order to be disabled."

---

[8] In his credibility analysis, the ALJ does not cite to Dr. Tobias' evaluation of plaintiff, presumably because Dr. Tobias herself noted the value of her findings was limited by the poor quality of the translator who assisted during the evaluation.

[9] If the ALJ was concerned that plaintiff's mental health professionals did not clearly state how his mental impairments limited his functional abilities, he should have developed the record on this point, as noted above.

See id. The ALJ's decision contains no explanation as to how such activities demonstrate a lack of credibility or are inconsistent with plaintiff's claimed inability to work.

The ALJ further noted a lack of "independent corroboration" as to plaintiff's "intrusive thoughts of tragic experiences in Cambodia," as well as a lack of "substantial evidence, e.g., intrusive flashbacks" to show the existence of PTSD and any functional limitations stemming from PTSD. (See Tr. 18.) While the record does not reflect that any mental health professional actually witnessed plaintiff experiencing a flashback, it does contain findings by trained mental health practitioners who treated plaintiff and, in each instance, diagnosed or opined that plaintiff suffered from PTSD. (See id. at 123, 145, 200.)

The ALJ's final reason for rejecting plaintiff's credibility, was that plaintiff has never worked since coming to the United States in 1985, and that when he has looked for work he was unable to find any. (See id. at 18.) While poor work history may be deemed probative of credibility, see Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998), the ALJ made no attempt to explain why plaintiff's particular work history is probative as to plaintiff's credibility.

Accordingly, the Court finds the ALJ failed to set forth clear and convincing reasons for finding plaintiff "not fully credible."

**C. The ALJ's Rejection of Plaintiff's Request for a New Psychological Consultative Examination**

Plaintiff's counsel moved for a new psychological consultative evaluation because of the poor quality of the translation and interpretation during the examination by Dr. Tobias, arguing that a good translator might make a difference in plaintiff's performance. (See Tr. at 18, 235-36.) The ALJ denied the motion, stating the "medical evidence does not establish a psychiatric diagnosis." (See Tr. at 18.)

The SSA will order a consultative examination where there is a "conflict, inconsistency, ambiguity or insufficiency in the evidence that must be resolved." See 20 C.F.R. § 404.1519a(b)(4); see also Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001). While a claimant does not have an affirmative right to a consultative examination, the ALJ's actions with respect to consultative examinations "must be taken in accordance with regulatory

procedures." See id. Here, the ALJ, in his decision, made note of Dr. Tobias's findings, which, as discussed, were unfavorable to plaintiff. Dr. Tobias conceded, however, that the "poor" quality of translation during plaintiff's examination was one of several "significant limitations" with respect to her diagnostic and clinical impressions. (See Tr. at 99, 101.) The ALJ did not explain why this "significant limitation" did not result in a "conflict, inconsistency, ambiguity or insufficiency in the evidence that must be resolved," and, accordingly, in the absence of such explanation, the ALJ's rejection of plaintiff's request is not supported by the record.

**D. Remand**

The Court has found that the ALJ failed to adequately explain his reasons: (1) for finding plaintiff does not have a "severe" impairment; (2) for finding plaintiff not fully credible; and (3) for rejecting plaintiff's motion for a new psychological consultative evaluation.

Where the ALJ has improperly rejected relevant evidence, some courts have declined to "remand solely to allow the ALJ to make specific findings" regarding that evidence; rather, such courts have credited the improperly rejected evidence as true and remanded solely for an award of benefits. See Lester, 81 F.3d at 834 (internal quotation and citation omitted); see also Smolen, 80 F.3d at 1292 (holding court may remand for award of benefits "where the record has been fully developed and where further administrative proceedings would serve no useful purpose"). Other courts, however, have not found the "crediting as true" doctrine to be mandatory. See Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) (discussing cases; remanding for reconsideration of claimant's pain testimony); see also Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003) (remanding for reconsideration where, inter alia, ALJ "failed to provide adequate reasons for rejecting the opinion of the treating physicians" and "did not properly reject [the claimant's] subjective complaints"). In the latter instance, courts have remanded where "outstanding issues must be resolved before a proper determination can be made." See id. at 1115.

In the instant case, there are outstanding issues that must be resolved before a proper determination can be made. As noted, the ALJ found plaintiff does not have "any 'severe'

medically determinable physical or mental impairment," (see Tr. at 18), but failed to provide a sufficient explanation for this finding.  In particular, the ALJ did not sufficiently explain why the opinions of plaintiff's treating mental health professionals should be rejected or why plaintiff was not credible.

Given these circumstances, and, in particular, that the ALJ's analysis ended at step two of the five-step evaluation process, the Court cannot find that "the record has been fully developed" or that "further administrative proceedings would serve no useful purpose." See Smolen, 80 F.3d at 1292; see also Bunnell, 336 F.3d at 115-16 (remanding for further proceedings where ALJ failed to provide adequate reasons for rejecting treating physician's opinion and claimant's subjective complaints); Dodrill v. Shalala, 12 F.3d 915, 917-18 (9th Cir. 1993) (remanding for ALJ to identify specific facts in record demonstrating claimant in less pain than alleged).  Consequently the Court will remand the action for further administrative proceedings to afford the ALJ the opportunity to more fully set forth the basis for his conclusions, to proceed with the sequential evaluation if appropriate, and to develop the record as necessary.

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment is hereby GRANTED in part, and defendant's cross-motion for summary judgment is DENIED.  The matter is REMANDED for further proceedings consistent with this decision.

The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: May 11, 2005                              /s/ Maxine M. Chesney
                                                 MAXINE M. CHESNEY
                                                 United States District Judge